IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Ina Shtukar Steinberg, ) | Case No. 0:23-cv-01781-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Tim Sturgis *individually and as* ) | |
| *President of MLII HOA*; ) | |
| Meadow Lakes II HOA, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court on Plaintiff's motion for partial summary judgment, Defendants' motions for summary judgment and in limine to dismiss for failure to submit pre-trial disclosures, and Plaintiff's objections to the Magistrate Judge's rulings on Plaintiff's motions for sanctions and to strike portions of a reply brief or, alternatively, for leave to file a sur-reply. [Docs. 31; 60; 78; 93; 94; *see* Docs. 40; 63; 72; 81; 95.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings.

On July 11, 2024, the Magistrate Judge issued an Order denying Plaintiff's motion for sanctions [Doc. 88] and a Report and Recommendation ("Report") recommending that the Court deny Plaintiff's motion for partial summary judgment, grant Defendants' summary judgment motion as to Plaintiff's federal claims, decline to exercise supplemental jurisdiction over Plaintiff's state-law claims, and deny as moot Defendants' motion in limine to dismiss for failure to submit pre-trial disclosures [Doc. 89]. In the Report, the Magistrate Judge denied Plaintiff's motion requesting that the Court strike

portions of Defendants' reply brief in support of their summary judgment motion or, alternatively, grant leave for Plaintiff to file a sur-reply. [*Id.* at 13 n.7.] Plaintiff filed objections to the Report on July 24,[1] and Defendants filed a reply to Plaintiff's objections the following day. [Docs. 94; 95.] On July 24, Plaintiff also filed objections to an Order issued by the Magistrate Judge denying Plaintiff's motion for sanctions. [Doc. 93.]

## STANDARD OF REVIEW

Regarding dispositive motions, the Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

On the other hand, review of the Magistrate Judge's decisions on non-dispositive matters, such as discovery, is deferential, and such rulings will be modified or set aside only if they are "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a); *see also*

---

[1] Plaintiff objects to the Report's recommendations as well as the Report's ruling on Plaintiff's motion to strike portions of a reply brief or, alternatively, for leave to file a sur-reply. [Doc. 94.]

2

28 U.S.C. § 636(b)(1)(A). A ruling "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948) (internal quotation marks omitted).

## BACKGROUND

The Magistrate Judge provided an accurate and thorough recitation of the facts and, therefore, the Court includes only the factual information recounted by the Magistrate Judge that is necessary to address Plaintiff's objections.

**Relevant Underlying Facts**

Plaintiff immigrated to the United States from Belarus in 2005. [Doc. 89 at 4.] She purchased a house in the Meadow Lakes II neighborhood in Rock Hill, South Carolina, in August 2020 with the intent of using it to host short-term guests through websites like Airbnb. [*Id.* at 2.] The house includes a guest house that is attached to the main house through a three-car garage. [*Id.*]

At the time Plaintiff purchased the home, the City of Rock Hill (the "City") did not have an ordinance regulating short-term rentals of residential homes. [*Id.* at 3.] However, Defendant Meadow Lakes II Homeowners Association (the "HOA") had applicable restrictive covenants, the meaning of which the parties disagree about. [*Id.*] As is relevant here, Sections 8.1 and 8.5 of the Amended and Restated Declaration of Restrictive Covenants for Meadow Lakes II provide:

> Section 8.1 Residential Use, Building Height. All Lots shall be used for single family residential purposes only[.]
>
> . . . .

>Section 8.5 No Commercial Activity. No trade or business of any sort shall be carried on upon any Lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood. No Building or other structure on any Lot shall be used for office or business purposes. Notwithstanding any provision herein to the contrary, a Lot Owner may conduct a home-based business activity within such Owner's residence if: (a) the existence or operation of the business activity is not apparent or detectable by sight, sound, or smell from outside the residence; (b) no employees shall be permitted to work on the premises except for family members residing in the dwelling; (c) no company vehicles shall be permitted as an accessory to a home business; (d) the business activity does not involve door-to-door solicitation of residents in the neighborhood; (e) the business activity does not include the use of the Association's Common Area; and (f) the business activity is consistent with the residential character of the neighborhood and does not constitute a nuisance, or a hazardous or offensive use, or threaten the security or safety of other residents.

[Doc. 31-54 at 11, 12.]

Within a couple of months of Plaintiff purchasing her home, the City enacted an ordinance regulating short-term rentals and created a permitting system for hosts. [Doc. 89 at 4.] To obtain a permit, an applicant, among other requirements, has to certify in writing that the relevant homeowners association either approved the use in question or did not regulate it. [*Id.*] A City official then must obtain verification on that point from a representative of the homeowners association before a permit may issue. [*Id.* at 4.]

When Plaintiff applied for a permit, she supplied the required certification, but when a City official sought verification from the HOA, Defendant Tim Sturgis, who was then the HOA president, informed the City that the HOA prohibited short-term rentals. [*Id.* at 4–5.] Sturgis indeed informed the City that some neighbors had already complained that Plaintiff was using her house for short-term rentals. [*Id.* at 5.] The City official, deferring

4

to Sturgis's representation that the HOA prohibited short-term rentals, denied Plaintiff's application on that basis. [*Id.*]

Plaintiff subsequently appealed the denial to the City's Zoning Board of Appeals, informing the City that she construed the restrictive covenants not to prohibit short-term rentals. [*Id.*] The City, in turn, informed the HOA that, to adjudicate Plaintiff's appeal, the City needed a formal notice from the HOA regarding its position as to whether the restrictive covenants barred the rentals. [*Id.* at 5–6.] The HOA provided such notice in the form of a letter from its attorney. [*Id.* at 6.] The letter explained that the HOA considered short-term rentals to constitute commercial activity because the City required them to obtain a business license. [*Id.*] It also argued that the HOA considered short-term rentals to be a business operation that would be inconsistent with Section 8.1's prohibition against using lots for anything other than single-family residential purposes and Section 8.5's prohibition on using lots for business purposes. [*Id.*] The letter further pointed to prohibitions in the restrictive covenants against any noxious activities that create a nuisance, disturbance, or annoyance to neighbors, contending that the complaints that neighbors had made concerning Plaintiff's hosting activities showed that her rentals also violated those provisions. [*Id.*]

In December 2020 and January 2021, Sturgis relayed to the City several complaints from Plaintiff's neighbors about her rentals. [*Id.*] The HOA was particularly concerned that Plaintiff was advertising her property as an event venue and that she had already rented her property at least once for a wedding and another time for a birthday party. [*Id.*] In response to these concerns, the City's Planning and Development Director decided that such use would classify the property as an event venue under the City's

5

zoning ordinance, which was prohibited by virtue of the house's zoning classification as Single-Family Residential-3, and which would require a business license. [*Id.*] After receiving notice from the City of this issue, Plaintiff removed any reference to an event venue in her Airbnb listing. [*Id.* at 7.]

During the pendency of Plaintiff's appeal of the denial of her permit application, neighbors continued to complain to the City regarding Plaintiff's short-term rentals and to gather information about Plaintiff's non-event rentals, including taking pictures, contacting guests online, and recording guest's activities if they made noise at night or violated parking rules. [*Id.*] Additionally, the HOA eventually moved to amend the restrictive covenants to specifically ban—or, from the HOA's perspective, more clearly ban—short-term rentals, including rentals of outbuildings or guest houses. [*Id.*] The amendment would have allowed the HOA to impose fines of up to $10,000 for violations. [*Id.*] It is unclear whether the amendment was eventually enacted. [*Id.*]

Another source of disagreement for the parties was a clubhouse that the HOA regularly rented for events such as weddings. [*Id.* at 2–3, 9.] It was located directly across the lake from Plaintiff's house, and Plaintiff contacted the police several times, complaining of noise or intoxicated guests after 10 p.m. [*Id.* at 9.] An officer responding to one such complaint told Plaintiff that his superiors had told him that HOAs were allowed to host parties past 10 p.m. [*Id.* at 9–10.]

**Plaintiff's Lawsuit**

In this action, Plaintiff alleges claims of civil conspiracy pursuant to 42 U.S.C. §1983 to deprive Plaintiff of her Equal Protection and Substantive Due Process rights and her privacy rights under the Driver's Privacy Protection Act, 18 U.S.C. § 2721, et seq. [*Id.*

6

at 10; Doc. 1 ¶¶ 111–49.] She also alleges a claim of conspiracy to deprive her of her civil rights pursuant to 42 U.S.C. § 1985(3). [Doc. 1 ¶¶ 150–56.] Additionally, she alleges state-law claims of civil conspiracy, intentional misrepresentation, constructive fraud, tortious interference, abuse of process, and invasion of privacy. [*Id.* ¶¶ 157–203.] And, she seeks a declaratory judgment that her hosting activities do not violate the restrictive covenants. [*Id.* ¶¶ 204–09.]

**The Report**

The Report recommends denying Plaintiff's partial summary judgment motion,[2] granting Defendants' summary judgment motion as to the § 1983 and § 1985(3) claims, and declining to exercise supplemental jurisdiction over the state-law claims. [Doc. 89.] Regarding each of the § 1983 civil conspiracy claims, the Magistrate Judge recommends granting summary judgment to Defendants because Plaintiff failed to forecast evidence (1) that Defendants acted under color of state law, (2) that they made an agreement and a joint plan or concerted action to deprive Plaintiff of her civil rights, and (3) that there was an underlying violation of her constitutional and statutory rights. [*Id.* at 13–22.] Regarding the conclusion that Plaintiff failed to forecast evidence that Defendants made an agreement and joint plan or concerted action to deprive Plaintiff of her civil rights, the Magistrate Judge specifies that Plaintiff failed to show that any agreement between Defendants and City officials was for an unlawful objective. [*Id.* at 17–18.]

As for the § 1985(3) conspiracy claim, the Magistrate Judge concludes that Plaintiff failed to identify any evidence that Defendants' actions against Plaintiff "were motivated

---

[2] Plaintiff sought summary judgment on her § 1983 claim alleging a conspiracy to deprive her of a vested property right in violation of her right to substantive due process. [Doc. 31 at 33.]

7

by a class-based, discriminatory animus or that they made an agreement or engaged in concerted action that could show a conspiracy." [*Id.* at 22–23.]

In light of her recommendation that summary judgment be granted to Defendants on Plaintiff's federal claims, the Magistrate Judge recommends that the Court exercise its discretion to decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. [*Id.* at 24.] The Magistrate Judge particularly notes that Plaintiff "raises numerous state law claims that, in the interest of comity, are more appropriate for consideration in South Carolina's courts because they include complex and novel issues of state law, especially about the interpretation of restrictive covenants as it relates to short-term rental platforms."[3] [*Id.*]

## DISCUSSION

Plaintiff's memorandum stating her objections to the Magistrate Judge's rulings and Report spans 63 pages. [Doc. 94.] Her arguments are rambling, overlapping, and generally not well defined, making consideration of them a challenge. Further, the Local

---

[3] On February 9, 2024, Plaintiff filed a motion for sanctions based on purported spoilation of evidence by a non-party, namely Steinberg's neighbors who did not produce emails and text messages in response to subpoenas from Steinberg. [Doc. 55.] Additionally, on March 13, 2024, Plaintiff filed a motion to strike or, alternatively, for leave to file a sur reply brief regarding Defendants' summary judgment motion, arguing that Defendants improperly raised new arguments in their reply brief in support of their summary judgment motion. [Doc. 73.] The Magistrate Judge denied both motions. [Docs. 88; 89 at 13 n.7.] Plaintiff has objected to both rulings. [Docs. 93; 94 at 60–62.] Because the Court concludes that neither ruling was contrary to law or clearly erroneous, the rulings on these motions are affirmed. *See* Fed. R. Civ. P. 72(a).

Additionally, on May 14, 2014, Defendants filed a motion in limine to dismiss for Plaintiff's failure to submit pretrial disclosures. [Doc. 78; *see* Doc. 81.] Defendants argue in their motion that Plaintiff is barred from presenting evidence at trial and her claims should therefore be dismissed. [Doc. 78.] Given that, as will be explained, the Court is granting summary judgment against Plaintiff on her federal claims and declining to exercise supplemental jurisdiction on her state-law claims, there will be no trial in federal district court and Defendants' motion in limine is found as moot.

Civil Rules require leave of court to file any memorandum exceeding 35 pages, and Plaintiff did not seek such leave prior to filing her memorandum.  *See* Local Civ. Rule 7.05(B)(1) (D.S.C.) (providing that "[u]nless an exception is granted by the court, no memorandum shall exceed . . . [t]hirty-five (35) double-spaced pages, in the case of an initial brief of any party").  Nevertheless, the Court has considered all of her objections out of an abundance of caution for the pro se Plaintiff, even though each may not be specifically discussed in this Order.[4]

**Plaintiff's § 1983 Conspiracy Claims**

As the Magistrate Judge notes, to establish a claim under 42 U.S.C. § 1983, a plaintiff must prove:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting

---

[4] Initially, the Court notes that Plaintiff raises many objections regarding the manner in which the Magistrate Judge analyzed the parties' summary judgment motions, including that she erred by failing to note that Defendants filings do not comply with applicable summary judgment procedures, failing to discuss and rule on the motions separately, failing to analyze the exhibits Plaintiff submitted in support of her motion for partial summary judgment, failing to view the record in the light most favorable to Plaintiff, refusing to consider her separately filed fact statement, wrongly shifting the burden to Plaintiff to forecast evidence supporting her claims, and inadequately explaining why the evidence did not support Plaintiff's claims.  [Doc. 94 at 4–16.]  Plaintiff's objections on these points are overruled, as the Magistrate Judge properly applied the correct standard of review and properly considered the evidence under Rule 56.  Nonetheless, the Court has considered de novo the parties' respective entitlement to summary judgment on the federal claims and concludes that the forecasted evidence, even viewed in the light most favorable to Plaintiff, is not adequate to support her § 1983 and 1985(3) claims, as will be discussed.

The Court notes that Plaintiff does not object to the recommendation that if summary judgment is granted against her on her § 1983 and § 1985(3) claims, the Court should decline to exercise jurisdiction over Plaintiff's state-law claims.  Having received the Report, the record in this case, and the applicable law regarding these claims, the Court finds no clear error.  Thus, the Court accepts the Report with respect to the state-law claims and incorporates that portion of the Report by reference.

under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Additionally, to demonstrate a civil conspiracy under § 1983, a plaintiff must show that the defendants acted jointly and some overt act was done in furtherance of the conspiracy, which infringed the plaintiff's civil rights.  *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).  A plaintiff in such a claim bears a "weighty burden" in that "to survive a properly supported summary judgment motion, [the plaintiff's] evidence must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."  *Id.*  "[R]ank speculation and conjecture" are insufficient.  *Id.* at 422.

The Magistrate Judge explained why she concluded Plaintiff did not forecast sufficient evidence to preclude summary judgment on this point:

> There is no evidence in the record that the HOA or Sturgis made an agreement or understanding with any other person or actor to deprive [Plaintiff] of her rights.  The record shows that the HOA, through Sturgis, consistently complained to city officials that [Plaintiff] was using her house to host-short term renters.  They made these complaints principally through emails to city officials, updating them when they believed [Plaintiff] was violating the City's short-term rental ordinance.  City officials, in turn, responded to [Defendants'] complaints and kept them updated as the permitting process unfolded.  While [Defendants] and city officials were in agreement that [Plaintiff's] renting violated the City's ordinance, [Plaintiff] has failed to show that such agreement was . . . for an unlawful objective.

[Doc. 89 at 17–18 (footnote and internal quotation marks omitted).]

Plaintiff objects, for several reasons, to the Magistrate Judge's conclusion that Defendants are entitled to summary judgment on her § 1983 claims.[5]  [Doc. 94 at 30–32,

---

[5] Plaintiff also argues that the Magistrate Judge erred in concluding that the intracorporate conspiracy doctrine would bar a claim of Defendants conspiring with City officials.  [Doc.

10

36, 39.]  Plaintiff makes multiple arguments pertaining to Defendants' subjective beliefs and intentions.  Plaintiff begins by pointing to forecasted evidence that she contends supports a reasonable inference that Defendants did not actually believe that the restrictive covenants prohibited Plaintiff from operating short-term rentals.[6]  She also contends that Defendants' true motivation in attempting to enforce its rights to stop Plaintiff's short-term rentals may not have been to preserve tranquility and the residential character in the community but rather to pursue the HOA's financial interests insofar as Plaintiff's rentals were competition for the HOA's own event venue.  [*Id.* at 36–38, 43–44.]

Even assuming Plaintiff is correct that the evidence she identifies gives rise to an inference that Defendants did not believe in the correctness of their construction of the restrictive covenants and that they were aggressively seeking to protect the HOA's financial interests, that would not be sufficient to survive summary judgment on a civil

---

94 at 45–46.]  The Court does not read the Report to reach that conclusion.  Rather, the Court understands the Report to recognize that that doctrine would not bar a claim that Defendants conspired with City officials but would bar a claim that Defendants conspired *with each other*.  [Doc. 89 at 17 n.8.]

[6] For example, she points to forecasted evidence that, during an HOA meeting on November 8, 2020, Sturgis had stated that the HOA understood that the restrictive covenants did not prohibit short-term rentals. [Doc. 94 at 31 (citing Doc. 63-1 ¶ 4).]  She also points to forecasted evidence that the HOA took steps toward amending the restrictive covenants to prohibit short-term rentals, which Plaintiff contends creates a reasonable inference that Defendants knew that, without the amendments, the restrictive covenants did not ban homeowners from using their property for short-term rentals.  [*Id.*]  She points out that Defendants repeatedly contacted the City to complain about Plaintiff's operation of short-term rentals rather than communicating directly with her.  [*Id.* at 32.]  And, she points to evidence that on January 17, 2021, a neighbor told her that she "was not 'classy enough' to reside in [their neighborhood] and threatened that the HOA was going to fine [her] for hosting [her] property $10,000 on each separate occasion, and foreclose on the house, unless [she] left the neighborhood voluntarily."  [*Id.* (quoting Doc. 31-3 ¶ 14).]

11

conspiracy claim. The record shows that in their communications with the City, Defendants consistently took the position that the restrictive covenants prohibited short-term rentals, and their attorney indeed sent a letter fully explaining their position. [Doc. 89 at 4–6.] Plaintiff has pointed to nothing in the record showing that Defendants ever communicated to the City that, in seeking to enforce the prohibition on short-term rentals, they were doing anything other than attempting to vigorously protect the HOA's interests. Accordingly, there was no basis in the record for a reasonable inference that there was any tacit agreement between Defendants and the City to pursue an unlawful objective. *See Hinkle*, 81 F.3d at 421; *cf. Ussery v. Freeman*, No. 5:23-CV-219-BO-RJ, 2024 WL 3073299, at *10 (E.D.N.C. June 20, 2024) (dismissing, for failure to state a claim, a § 1983 conspiracy cause of action when although the allegations supported an agreement as to how to enforce a COVID pandemic executive order requiring North Carolinians to stay home unless performing essential activities, it did not "plausibly allege that there was any mutual understanding to accomplish *an unlawful plan*, or, in other words, to violate [any protestor's] constitutional rights"), *appeal filed*, No. 24-1671, 2024 WL 3073299 (4th Cir. Jul. 22, 2024).

Plaintiff also argues that the Magistrate Judge erred by failing to consider evidence that Plaintiff maintains places the City in a bad light; in particular, evidence that the City appeared to take complaints about Plaintiff's short-term rentals more seriously than it took Plaintiff's complaints about the HOA's event venue [Doc. 94 at 38–40], and evidence that the City was willfully blind to the fact that Defendants' interpretation of the restrictive covenants was incorrect [*id.* at 32–34, 42]. Both of these categories of evidence at most tend to show the state of mind *of the City's employees*. They do not tend to show what

Defendants believed, and thus do not support an inference that Defendants were acting for an unlawful purpose or that they had a tacit agreement with the City to do so.

In sum, the root of the conflict here is between Defendants, who contended that the restrictive covenants prohibited short-term rentals, and Plaintiff, who espoused the opposite view. Both sides sought vigorously to enforce their rights for reasons that were important to them. Although the City ultimately sided with Defendants, there is simply no evidence that would support a non-speculative inference that Defendants agreed to pursue an unlawful objective or that the City agreed to help Defendants do so. The Court therefore agrees with the Magistrate Judge's recommendation that Defendants' summary judgment motion be granted on this basis as to Plaintiff's § 1983 civil conspiracy claims and that Plaintiff's motion for partial summary judgment be denied.[7]

---

[7] Plaintiff argues that the Magistrate Judge erred in several respects in concluding that Plaintiff failed to forecast sufficient evidence that Defendants engaged in state action. [Doc. 94 at 16–29, 42–45.] Plaintiff also argues that the Magistrate Judge erred in concluding that Plaintiff failed to forecast sufficient evidence of a constitutional violation underlying her alleged § 1983 civil conspiracy claims. [*Id.* at 35, 46–51.] Because the Court concludes that the Magistrate Judge correctly determined that Plaintiff's § 1983 conspiracy claims fail for the reason discussed, the issues of state action and an underlying constitutional violation are immaterial to Defendants' entitlement to summary judgment, and the Court declines to address these objections.

Plaintiff further maintains that the Magistrate Judge erred in concluding that Defendants are entitled to summary judgment because they did not act arbitrarily and their actions were reasonable. [*Id.* at 46.] In this respect, Plaintiff argues that the Magistrate Judge essentially allowed Defendants to claim the defense of qualified immunity. [*Id.*] The Court disagrees. In the relevant portion of the Report, the Magistrate Judge concludes that Plaintiff's § 1983 conspiracy claim fails to the extent that she relied on a conspiracy to violate Plaintiff's substantive due process rights because the action complained of was not "so arbitrary and irrational" as to violate Plaintiff's right to substantive due process. [Doc. 89 at 20–21.] In other words, the analysis in question was part of the Magistrate Judge's reasoning establishing that Plaintiff did not forecast evidence to support a constitutional violation underlying her conspiracy claims. The Magistrate Judge did not purport to conclude that Defendants were entitled to assert qualified immunity. Accordingly, Plaintiff's objection is overruled.

**Plaintiff's § 1985(3) Conspiracy Claim**

As the Magistrate Judge notes, to prove a conspiracy claim under § 1985(3), a plaintiff must prove

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).  The Magistrate Judge concluded that Plaintiff failed to identify any evidence that Defendants were motivated by a desire to deprive Plaintiff of her civil rights, that they were part of an agreement or plan of concerted action, or that Plaintiff's underlying rights were violated.  [Doc. 89 at 23.]  As with Plaintiff's § 1983 claim, the Court concludes that Plaintiff's failure to identify evidence of an improper motivation is dispositive.

In support of her view that she forecasted sufficient evidence to show that Defendants were motivated by a specific class-based, invidiously discriminatory animus, Plaintiff points to a statement made by one of her neighbors who told her that she was "not classy enough" to reside in their neighborhood and threatened to fine her $10,000 each time she had guests and to foreclose on her property.  [*Id.* at 53 (citing Doc. 31-3 ¶ 14).]  Plaintiff specifically contends that this statement gives rise to a reasonable inference that Defendants were motivated by animus toward her because of her accent, national origin, familial status, or gender.  [*Id.* at 53–54.]  Plaintiff also points to evidence of other behavior of her neighbors that she perceives as demonstrating that she was not liked by some in her community.  [*Id.* at 54 (citing Docs. 31-3; 63-1; 63-2; 63-3).]  The Court is not persuaded.  Even assuming that Plaintiff was disliked by her neighbors, none

14

of the evidence she points to gives rise to a reasonable inference that their dislike of her was based on her membership in any suspect class, even apart from the fact that the neighbors whose behavior she points to are not Defendants in this case.[8]

Plaintiff also maintains that Defendants' steps toward amending the restrictive covenants to authorize the HOA to fine owners for operating short-term rentals constitute evidence that Defendants were motivated by a specific class-based invidiously discriminatory animus.  [*Id.* at 55.]  However, any conclusion that Defendants' interest in amending the restrictive covenants was based on such animus, rather than simply on an interest in eliminating short-term rentals or at least eliminating any basis for argument that short-term rentals were allowed, could only be based on rank speculation.

Plaintiff further argues that the Magistrate Judge erred in not analyzing her § 1985(3) claim under the *McDonnell Douglas* burden-shifting framework, which is generally employed in the employment-discrimination context in the absence of direct evidence of intentional discrimination.  [*Id.* at 56–57]; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  In this regard, Plaintiff contends that it is undisputed that many of the owners invite guests onto their property, even if it is not for financial gain, and Plaintiff maintains that Defendants' and the City's opposing of her short-term rentals when they did not oppose other owners' hosting of their friends and acquaintances gives rise to a reasonable inference that the true reason for this different treatment is some sort

---

[8] As she does with regard to her § 1983 claim, Plaintiff maintains that the Magistrate Judge erred in concluding that she failed to forecast evidence that Defendants' position that the restrictive covenants prohibited Plaintiff's short-term rentals was not held in good faith. [Doc. 94 at 58–59.]  For the same reasons that the Court has already discussed when addressing Plaintiff's similar arguments in the context of Plaintiff's § 1983 claims, the Court concludes that Plaintiff has failed to forecast sufficient evidence that Defendants were motivated by anything other than a desire to vigorously protect the HOA's interests.

15

of discriminatory animus.  [Doc. 94 at 56–57.]  This argument borders on the absurd.  Certainly there are many reasons why renting one's home out to strangers whose only connection to the owner is financial might be viewed by neighbors and the HOA with more wariness than having friends over to visit.

Plaintiff further maintains that an inference of discrimination arises from the fact that Defendants rented out the HOA's clubhouse for parties but they sought to restrict Plaintiff from using her property for short-term rentals.  [*Id.*]  However, Plaintiff herself recognizes the obvious interest the HOA had in raising revenue by renting out its clubhouse.  [*Id.* at 36–38, 43–44.]  And, there is nothing suspicious on its face about an HOA allowing a clubhouse to be rented for events but taking a different view with regard to single-family homes.

As noted with regard to Plaintiff's § 1983 claim, the Magistrate Judge correctly concluded that Plaintiff failed to forecast evidence that Defendants' actions here were motivated by anything other than Defendants' good-faith pursuit of the HOA's legitimate interests and the Magistrate Judge further correctly found that Plaintiff forecasted no evidence that Defendants were motivated by class-based invidiously discriminatory animus.  The Court therefore overrules Plaintiff's objections and grants Defendants' summary judgment motion regarding Plaintiff's § 1985(3) claim.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court accepts in part the Report and Recommendation of the Magistrate Judge.  Plaintiff's motion for partial summary judgment [Doc. 31] is DENIED and Defendants' motion for summary judgment [Doc. 60] is GRANTED IN PART.  The motion is granted as to Plaintiff's claims brought under 42

U.S.C. §§ 1983 and 1985(3).  As to Plaintiff's state-law claims, the Court declines to exercise supplemental jurisdiction over those claims, and they are DISMISSED without prejudice.  Plaintiff's objection to the Magistrate Judge's Order denying her motion for sanctions [Doc. 88; *see* Doc. 55] is OVERRULED, as is her objection to the Magistrate Judge's denial of her motion to strike or, alternatively, for leave to file a sur reply brief regarding Defendants' summary judgment motion [Doc. 89 at 13 n.7; *see* Doc. 73]. Accordingly, both of those rulings are AFFIRMED.  Defendants' motion in limine to dismiss for failure to submit pre-trial disclosures [Doc. 78] is FOUND AS MOOT.

  IT IS SO ORDERED.

s/Jacquelyn D. Austin<br>United States District Judge

September 17, 2024
Columbia, South Carolina

### NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.